UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALEXANDR DVORNIKOV, ANTONIO CARDONA, JOSEPH McPHERSON, and JOSEPH QUINN, on behalf of themselves and all others similarly situated, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 15-cv-13286-ADB |
| LANDRY'S INC. and CHLN, Inc., d/b/a CHART HOUSE BOSTON, | * * * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

## I.    INTRODUCTION

In this putative class action, Plaintiffs[1] bring suit against Landry's, Inc. and CHLN, Inc.

("Defendants") for alleged violations of the Massachusetts Tips Act, Mass. Gen. Laws ch. 149, §

152A, and the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, §§ 1, 7. Presently

pending before this Court are Defendants' Motion for Summary Judgment [ECF No. 30] and

Plaintiffs' Motion for Class Certification [ECF No. 26]. For the reasons stated below, the Court

DENIES Defendants' Motion for Summary Judgment and GRANTS Plaintiffs' Motion for Class

Certification.

## II.    PROCEDURAL BACKGROUND

On June 25, 2015, Plaintiffs filed a complaint against Defendants in Massachusetts

Suffolk County Superior Court. [ECF No. 2-1]. On September 3, 2015, Defendants removed this

case from state court on the basis of diversity jurisdiction. [ECF Nos. 1, 2]. On July 13, 2016,

---

[1] Alexandr Dvornikov, Antonio Cardona, Joseph Quinn, and Joseph McPherson.

Plaintiffs filed a motion to certify a class of servers who worked at the Chart House any time from June 25, 2012 to July 1, 2015 and to name the four Plaintiffs as class representatives. [ECF No. 26]. Defendants opposed the motion for class certification on August 10, 2016. [ECF No. 39]. On August 24, 2016, Plaintiffs filed a reply brief. [ECF No. 41].

On July 29, 2016, Defendants filed their motion for summary judgment. [ECF No. 30]. Plaintiffs opposed the motion [ECF No. 42], and Defendants replied [ECF No. 45]. Defendants filed a statement and counterstatement of undisputed material facts under Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts (LR 56.1). [ECF Nos. 32, 46]. Plaintiffs also filed a statement and counterstatement under LR 56.1. [ECF No. 43].

## III.   MOTION FOR SUMMARY JUDGMENT

### a.  Factual Background

The following facts are undisputed, unless otherwise noted. Pursuant to LR 56.1, material facts contained within the LR 56.1 statement filed by the moving party are deemed admitted for purposes of this summary judgment motion unless controverted by the opposing party's statement. Additional relevant facts will be discussed as needed in this Memorandum and are presented in the light most favorable to the Plaintiffs, the nonmoving party.

The Chart House is a restaurant located in Boston, Massachusetts. The Chart House has the following "front-of-the-house" employees: servers, bartenders, bussers, food runners, and hostesses. [ECF No. 43 ¶ 34]. At any one time in the past three years, the Chart House has employed between six and twelve hostesses, id. ¶ 35, with between two and eight hostesses scheduled per shift depending on the anticipated volume of business, id. ¶ 36.

The Plaintiffs were all employed at the Chart House as servers during the relevant time period, which is June 25, 2012 to July 1, 2015. Plaintiffs were all paid at the service, or tipped,

rate, meaning that they were paid at a rate below minimum wage plus customer tips. [ECF No. 32 ¶¶ 1–4]. Prior to July 1, 2015, the Chart House servers were required to participate in an automated, tip-sharing program implemented by Defendants' corporate office through which hostesses received 1% of gross sales, bussers received 1.3% of gross sales, bartenders received 1.2% of gross sales, and servers received the remainder. Id. ¶ 10. The tip-out amounts were calculated by a computer system when servers "cashed out" at the end of their shifts, and the amounts were paid to the appropriate non-server employees as part of their paychecks. [ECF No. 43 ¶ 32]. Hostesses were also paid at a rate below minimum wage, but at a rate higher than servers. Id. ¶ 37. Around July 1, 2015, hostesses were removed from the tip pool. [ECF No. 32 ¶ 10].

During the relevant time period, the Chart House hostesses had three possible roles: Seater, Leader, and Greeter. Id. ¶ 14. The hostesses rotated through these roles in a given shift. Id. Although Defendants claim that the following descriptions do not capture the entirety of the hostesses' duties, the following descriptions describe at least a portion of the duties expected of each role. The Greeter was the hostess whom guests first saw upon entering the Chart House and was considered the "point person" among hostesses. [ECF No. 43 ¶ 39]. The Leader took care of reservations and answered phone calls, a role which often overlapped with the Greeter's. Id. ¶ 41. The Seater seated guests and monitored the floor to keep other hostesses up-to-date on the status of various tables. Id. ¶ 40.

There is some evidence that the hostesses sometimes served guests directly by carrying their drinks from the bar to the table, clearing extra place settings, reconfiguring tables to accommodate parties, clearing tables, taking drink or food orders, and delivering bread to a table. [ECF No. 32 ¶¶ 15–26]. The parties vigorously dispute the extent to which Chart House

hostesses served guests directly, what the Chart House hostesses' duties were, and whether those duties included serving food and beverages and clearing tables. The hostess' job description does not expressly list serving food and beverages to customers and clearing tables as a duty [ECF No. 43 ¶¶ 43–44], but Defendants argue that the job description document is not exclusive or exhaustive, [ECF No. 46 ¶ 43]. Similarly, the mandatory training quizzes that tested Chart House hostesses on a hostess' responsibilities did not seem to suggest that hostesses were responsible for serving food and drinks to customers or clearing tables. [ECF No. 43 ¶ 74]. Defendants argue that the quizzes, like the hostess job description, are not exhaustive. [ECF No. 46 ¶ 74].

### b. Legal Standard

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S.

317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trial-worthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In reviewing the record, however, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermkt. Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)). At summary judgment, however, "the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (alteration in original) (quoting Anderson, 477 U.S. at 249). At bottom, summary judgment for the defendant "is appropriate when the evidence is so one-sided that no reasonable person could find in favor of the plaintiff." Vega-Colon v. Wyeth Pharm., 625 F.3d 22, 25 (1st Cir. 2010) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 211 (1st Cir. 2003)).

### c.  Discussion

#### i.  Relevant Statutes

Under the Massachusetts Minimum Wage Law, Mass Gen. Laws ch. 151, §§ 1, 7

("Minimum Wage Law"), employers may pay employees below minimum wage provided that

three conditions are met:

1. the employer informs such employee in writing of the provisions of M.G.L. c. 151, § 7, paragraph three;

2. the employee actually receives tips in an amount which, when added to the service rate, equals or exceeds the basic minimum wage; and

3. all tips received by the employee are either retained by him or her or are distributed to him or her through a tip-pooling arrangement. *If the employee is engaged in the serving of food or beverages, a tip-pooling arrangement must conform with the requirements of M.G.L. c. 149, § 152A.*

454 Mass. Code Regs. 27.03(2)(b) (emphasis added). Under the Massachusetts Tips Act (the

"Tips Act"), only three categories of employees may pool tips: wait staff employees, service

employees, and service bartenders. See Mass. Gen. Laws ch. 149 § 152A(c). A "wait staff

employee" is defined as "a person, including a waiter, waitress, bus person, and counter staff,

who: (1) serves beverages or prepared food directly to patrons, or who clears patrons' tables;[2] (2)

works in a restaurant, banquet facility, or other place where prepared food or beverages are

served; and (3) who has no managerial responsibility." Id. § 152A(a). All three requirements of

the "wait staff employee" definition must be met in order for an employee to qualify as wait staff

under the Tips Act. See Advisory 2004/3, An Advisory from the Attorney General's Fair Labor

Division on an Act Protecting the Wages and Tips of Certain Employees ("Advisory 2004/3");

see also Matamoros v. Starbucks Corp., 699 F.3d 129, 133 (1st Cir. 2012).

---

[2] For ease and clarity, the Court refers to this requirement as "serving/clearing" throughout this Memorandum.

Here, Defendants argue that Chart House hostesses properly participated in the tip-sharing program, in compliance with the Tips Act, because they were "wait staff employees." Plaintiffs respond that Chart House hostesses do not qualify as "wait staff employees." Plaintiffs further argue that Defendants violated the Minimum Wage Law because Chart House servers remitted a portion of their tips to hostesses in violation of the Tips Act, and therefore the third condition could not meet to except those jobs from the minimum wage requirement. Plaintiffs' claim that Defendants violated the Minimum Wage Law thus depends on whether the Defendants violated the Tips Act.

ii.  Analysis

Summary judgment turns on the narrow issue of whether Chart House hostesses were "wait staff employees" within the meaning of the Tips Act. The parties present differing statutory interpretations of the definition of "wait staff employee." Plaintiffs argue that there is a primary duty requirement, such that serving/clearing must be an employee's primary duty for that employee to qualify as wait staff. Defendants argue that there is no primary duty requirement and that even a *de minimis* amount of serving/clearing qualifies an employee as wait staff. After careful consideration, the Court concludes that an employee must engage in more than a *de minimis* amount of serving/clearing before he or she qualifies as a "wait staff employee" under the Tips Act, but does not determine at this time whether there is a primary duty requirement.

Massachusetts courts interpret a statute "in accord with 'the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may

be effectuated.'" <u>Champigny v. Commonwealth</u>, 661 N.E.2d 931, 932 (Mass. 1996) (quoting

<u>Telesetsky v. Wight</u>, 482 N.E.2d 818, 821 (Mass. 1985)). "Courts must ascertain the intent of a

statute from all its parts and from the subject matter to which it relates, and must interpret the

statute so as to render the legislation effective, consonant with sound reason and common sense."

<u>DiGiacomo v. Metro. Prop. & Cas. Ins. Co.</u>, 847 N.E.2d 1107 (Mass. App. Ct. 2006) (citing

<u>Champigny</u>, 661 N.E.2d at 932 (additional citations omitted)). However, "[w]here the ordinary

meaning of the statutory terms yields a workable result, [a court] need not resort to extrinsic aids

of interpretation such as legislative history." <u>Cooney v. Compass Grp. Foodservice</u>, 870 N.E.2d

668, 674 (Mass. App. Ct. 2007) (quoting <u>Pyle v. Sch. Comm. of S. Hadley</u>, 667 N.E.2d 869,

871–72 (Mass. 1996)).

> Prior to 2004, § 152A read:
>
> No employer or other person shall solicit, demand, request or accept from *any employee engaged in the serving of food or beverage* any payment of any nature from tips or gratuities received by such employee during the course of his employment, or from wages earned by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment; and no contract or agreement between an employer or other person and an employee providing for either of such payments shall afford any basis for the granting of legal or equitable relief by any court against a party to such contract or agreement. If an employer or other person submits a bill or invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them. Whoever violates any provision of this section shall be punished by a fine of not more than one thousand dollars and the court may require such employer or other person to make restitution for any tips or gratuities accepted or retained by him in violation of this section.

(emphasis added). Thus, the provision only protected "any employee engaged in the serving of

food or beverage." Prior to its amendment in 2004, the Tips Act did not expressly mention

managerial responsibility and courts read in a primary duty test. "Massachusetts courts generally

applied a 'primary duty' test to determine whether an employee was eligible to participate in a

tips pool. If an employee's primary duty was to serve customers, she was eligible to participate.

8

Conversely, if her primary duty was to manage, she was ineligible to participate." See Matamoros, 699 F.3d at 135 (internal citations omitted).

The Tips Act was amended in 2004 (the "2004 Amendment"). See 2004 Mass. Legis. Serv. ch. 125, § 13. The 2004 Amendment created the three-pronged definition of "wait staff employee," quoted in full above. This definition included the requirements that the employee have "no managerial responsibility" and that he "serve[] beverages or prepared food directly to patrons, or . . . clear[] patrons' tables."[3] Mass. Gen. Laws ch. 149, § 152A(a). It further provided that "[n]o employer or person shall cause, require or permit any wait staff employee, service employee, or service bartender to participate in a tip pool through which such employee remits any wage, tip or service charge, or any portion thereof, for distribution to any person who is not a wait staff employee, service employee, or service bartender." Id. § 152A(c). Because employees with _any_ amount of management responsibility could no longer be considered "wait staff" under the Tips Act, courts viewed the 2004 Amendment as effectively rendering the primary duty test employed prior to 2004 moot as it pertained to employees with managerial responsibilities. See Matamoros, 699 F.3d at 134–35. The 2004 Amendment also seemed to make the Tips Act more protective by establishing a "bright-line rule" where courts had previously employed a primary duty test. Id.

In this case, Defendants argue that the 2004 Amendment establishes that the first wait staff prong, pertaining to serving/clearing, does not incorporate a primary duty standard. While the Court does not hold in this Memorandum that a primary duty standard applies to the first wait

---

[3]  The relevant section reads: "'Wait staff employee', a person, including a waiter, waitress, bus person, and counter staff, who: (1) serves beverages or prepared food directly to patrons, or who clears patrons' tables; (2) works in a restaurant, banquet facility, or other place where prepared food or beverages are served; and (3) who has no managerial responsibility." Mass. Gen. Laws ch. § 152A(a). The 2004 Amendment also extended the Tips Act's protections to service employees and service bartenders, which is not at issue in this case.

staff requirement, it also does not find that Plaintiffs' argument is foreclosed. The primary duty

test applied prior to 2004 determined whether someone primarily served customers or primarily

managed, see, e.g., id. at 135, but did not seem to squarely address the issue of the applicability

of the Tips Act to employees who neither primarily served customers nor primarily managed.

The 2004 Amendment, in creating a bright-line rule with respect to management responsibility,

made very clear that an employee with any amount of managerial responsibility does not qualify

as a "wait staff employee." It did not plainly resolve, however, whether there is a primary duty

requirement with respect to how much serving/clearing an employee must engage in to qualify as

"wait staff" if he is not management.

  The text of the Tips Act's wait staff definition itself is ambiguous with respect to what

precise standard should be applied to the serving/clearing prong, but discourages reading in a *de

minimis* standard. Section 152A(a) of the Tips Act does not include a modifier to make clear

what amount of serving/clearing satisfies the requirement that wait staff must "serve[] beverages

or prepared food directly to patrons" or "clear[] patrons' tables" to be eligible for tip-sharing.

Mass. Gen. Laws ch. 149, § 152A(a). Section 152A(a) does, however, include a list of examples

of the types of persons who can qualify as "wait staff employee[s]" if they meet the requisite

conditions: "a waiter, waitress, bus person, and counter staff." Id. Such employees generally

perform significantly more than *de minimis* serving/clearing work. Moreover, with respect to the

first requirement, the 2004 Amendment replaced the phrase "engaged in the serving of food or

beverage" with the current phrase, "serves beverages or prepared food directly to patrons, or who

clears patrons' tables." Id. The new formulation appears to be more demanding. It employs the

active, rather than passive, voice and includes the modifier "directly" to be more specific about

the type of serving/clearing work the Massachusetts Legislature had in mind. Although

sufficiently ambiguous to not be dispositive, the text of the Tips Act indicates that the Legislature contemplated something more than a *de minimis* standard to meet the first wait staff requirement.

Moreover, requiring only *de minimis* serving/clearing would fail to comport with the legislative purpose of the Tips Act. The Tips Act is intended to be protective of the wages and tips of employees that fall within its ambit, including "those front-line food service employees who are in close contact with customers and who historically have depended on customer tips and gratuities to earn a living." See DePina v. Marriott Int'l, Inc., No. SUCV200305434G, 2009 WL 8554874, at *10 (Mass. Super. July 28, 2009) (discussing pre-2004 Tips Act). The Massachusetts Legislature, in enacting the Tips Act, intended that wait staff employees "receive the tips, gratuities, and service charges that customers intend them to receive." See DiFiore v. Am. Airlines, Inc., 910 N.E.2d 889, 893 (Mass. 2009) (discussing intent with reference to service employees). "[A]s expressly stated in its title [when the act was passed], the purpose of the revised Act is to protect[] the wages and tips of certain employees." Id. at 894 (internal quotation and citation omitted). Moreover, "[t]here is nothing in the legislative history of the amendment or its language to suggest that the Legislature intended to diminish the protection provided to these employees." Id. The Massachusetts Supreme Judicial Court noted that in enacting the 2004 Amendment to the Tips Law, the Legislature "made clear in § 152A(a) that it wished the definitions it enacted to serve its legislative purpose, not thwart it." Id. at 895. The three requirements in the wait staff definition define the types of employees that fall within the protective ambit of the Tips Act. The Tips Act specifically identifies "waiter, waitress, bus person, and counter staff" as the types of wait staff employees the law is intended to protect. The first wait staff prong is thus intended to help define the scope of the protection afforded to these

types of employees. Requiring only a *de minimis* amount of serving/clearing would expand the definition of wait staff to the point of significantly undermining the Tips Act's protective intent. As such, a *de minimis* standard would dilute and thereby thwart the legislative purpose of the Tips Act.

Furthermore, the interpretive guidance from the Massachusetts Attorney General also indicates that a *de minimis* standard is contrary to the Tips Act's purpose. The Advisory guidelines from the Massachusetts Attorney General provide the following interpretive guidance on persons who qualify as wait staff employees under the post-2004 Tips Act:

> He or she must provide service to customers by serving beverages or prepared food directly, or by clearing customers' tables; and the worker may not have any managerial responsibility.

> Employees who do not serve patrons directly are not "wait staff employees" and, therefore, may not receive tips or service charges. Examples of non-wait staff employees include kitchen and administrative staff.

Advisory 2004/3 at 2 (internal citation omitted). The Massachusetts Supreme Judicial Court has held that the Attorney General's interpretation of the Tips Act must be given "substantial deference." DiFiore, 910 N.E.2d at 897 n.11. If the Court adopted the *de minimis* standard argued for by Defendants, then a kitchen or administrative staff employee may very well qualify as a wait staff employee provided he engages in some incidental serving/clearing work.

Other portions of the Tips Act itself also discourage reading a *de minimis* standard into the serving/clearing prong of the wait staff definition. Section 152A(d) requires that a service charge or tip "be remitted only to the wait staff employees, service employees, or service bartenders *in proportion to the service provided by those employees*." Mass. Gen. Laws ch. 149, § 152A(d) (emphasis added). Plaintiffs and Defendants both argue that the provision supports their respective interpretations of the scope of the definition of a wait staff employee. In the

Court's view, the provision cuts against applying the *de minimis* standard to the first wait staff requirement. First, it indicates that the Massachusetts Legislature recognized the fact that the amount of service that employees provided determined the tips they deserved. Second, it suggests that the Massachusetts Legislature believed the proportion was at least roughly measurable. Allowing employees who provided only *de minimis* service to participate in tip pooling runs counter to both of these ideas. At bottom, such an interpretation would effectively allow employers to compensate employees at the periphery of the wait staff employee definition at the direct expense of employees who were clearly intended to be protected. The Court does not believe that the Massachusetts Legislature intended such a result.

Thus, the Court concludes that the first wait staff prong requires more than *de minimis* serving/clearing work. The Court, however, need not decide exactly what amount of serving/clearing is required for employees to qualify as wait staff.[4] In this case, there are genuine issues of material fact involving the extent and frequency with which the Chart House hostesses engaged in serving/clearing work. Thus, regardless of what the standard is, beyond *de minimis*, the Court would not be able to determine at this stage that the standard is met given the material facts in dispute. See, e.g., Raghai v. BH Normandy Owner, LLC, No. 10-3392, Memorandum and Order on Defendants BH Normandy Owner, LLC's and Pyramid Newton Management, LLC's Motion for Summary Judgment as to Both Counts in Plaintiffs' Second Amended Complaint (Mass. Super. May 23, 2012) (denying summary judgment because there were material factual disputes on the extent of the food runners' activity in delivering food to tables) [ECF No. 42-3]; see also Cormier v. Landry's Seafood House-N.C., Inc., No. 13-11822, 2015 WL 12732419, at *14 (D. Mass. Feb. 23, 2015) (recommending that summary judgment motion

---

[4] Although the Court does not hold in this Memorandum and Order that the first wait staff prong has a primary duty requirement, it appears likely that there is such a requirement.

be denied "because there is a genuine issue of material fact as to whether hostesses in the Floater role are wait staff employees under the Tips Act"). Thus, whether the tip pooling arrangement violated the Tips Act cannot be decided on summary judgment.

Because Plaintiffs' second count—that Defendants violated the Minimum Wage law—turns on whether Defendants violated the Tips Act, summary judgment on Count II is also denied.

## IV.    MOTION FOR CLASS CERTIFICATION

Plaintiffs seek certification of the following class: "All individuals who have worked as servers at the Chart House Boston in Boston, Massachusetts, at any time from June 25, 2012 to July 1, 2015, and who have remitted any portion of their tips to hostesses through Defendants' tip share program." [ECF No. 26 at 1]. Furthermore, Plaintiffs ask the Court to "appoint Alexandr Dvornikov, Antonio Cardona, Joseph McPherson, and Joseph Quinn as representatives for the class, and designate the undersigned attorneys as class counsel." Id. at 2. Defendants oppose certification. [ECF No. 39].

### a.   Factual Background

The Court incorporates by reference the facts already set forth herein. It adds the following facts specifically relevant to class certification. [ECF No. 26]. All Chart House servers during the relevant period were paid at the service rate, which is less than the Massachusetts minimum wage, with the apparent intent that tips would provide further compensation. Their employer, Landry's, claimed a tip credit under Massachusetts law. All Chart House servers and hostesses participated in the automated tip-sharing program. The percentage remitted to hostesses was fixed at 1% of the gross sales per shift, regardless of what the hostesses actually did during that shift. Hostesses were also paid below the state minimum wage, but more than the

service rate, until July 1, 2015, when they were removed from the tip-sharing program altogether.

All four named Plaintiffs worked at the Chart House during the relevant time period: Joseph McPherson has worked as a server since May 2014; Joseph Quinn worked as a server and bartender for about eight years, until December 2015; Alexandr Dvornikov worked as a server from September 2010 until June 2015; and Antonio Cardona has worked as a server since 2010 except for a two-month period in 2014.

### b.  Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01(1979)). A potential class must meet the requirements of Fed. R. Civ. P. 23 to be certified. Smilow v. Sw. Bell Mobile Sys., 323 F.3d 32, 38 (1st Cir. 2003); see also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393, 399–400 (2010) (plurality opinion) (Rule 23 trumps New York State class certification rule where the two conflicted in federal diversity case).[5]

Rule 23 permits class certification when the requirements of Rule 23(a) (defining the prerequisites for class certification) and one section of Rule 23(b) (enumerating further requirements for a class action to proceed) are met. Fed. R. Civ. P. 23(a), (b); see Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Rule 23(a) provides the following

---

[5] The Plaintiffs argue that the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 150, "authorizes employees to pursue claims on behalf of 'others similarly situated.'" [ECF No. 26 at 6]. Thus, they argue that the Rule 23 standard should be relaxed in this case. Id. at 6–7. They analogize to 93A class actions, which do relax the Rule 23 requirements. Id. Defendants disagree, and want the Court to hold Plaintiffs to the requirements of Rule 23 strictly. [ECF No. 39]. Because Rule 23 is satisfied in this case, the Court need not resolve the issue of whether Rule 23 can be relaxed in these sorts of cases.

requirements: "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) provides the following requirement: "the questions of law or fact common to class members predominate over any questions only affecting only individual members [predominance];" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). "To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)." Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997)).

### c. Discussion

As discussed below, the Plaintiffs have met all of the requirements of Rule 23(a) and 23(b)(3). Fed. R. Civ. P. 23(a), (b)(3). Class certification is therefore appropriate.

#### i. Numerosity

The numerosity requirement of Rule 23(a) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[T]he party instituting the action need not show the exact number of potential members in order to satisfy' the numerosity prerequisite, but she 'does bear the burden of showing the impracticability[,] and mere speculation as to the number of parties is not sufficient to satisfy Rule 23(a)(1).'" Swack v. Credit Suisse First Bos., 230 F.R.D. 250, 258 (D. Mass. 2005) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1762 (3d ed. 2004)).

Plaintiffs estimate that the putative class in this case would include approximately 70 servers

who worked at the Chart House over the past three years. [ECF No. 26 at 8]. Courts have

generally found that the existence of 40 or more relevant individuals satisfies the numerosity

requirement. See Garcia v. E.J. Amusements of N.H., Inc., 98 F. Supp. 3d 277, 285 (D. Mass.

2015), appeal dismissed (Nov. 10, 2015).[6] Thus, Rule 23's numerosity requirement is met here

because the joinder of all the putative plaintiffs would be impracticable.

ii.   Commonality

The commonality requirement is met when "there are questions of law or fact common to

the class." Fed. R. Civ. P. 23(a)(2). "Rule 23(a)'s requirement of commonality is a low bar, and

courts have generally given it a 'permissive application.'" In re New Motor Vehicles Canadian

Exp. Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008) (quoting Wright et al., supra, § 1763, at 221.

"In general, where 'implementation of [a] common scheme is alleged, the commonality

requirement usually is satisfied.'" Tigges v. AM Pizza, Inc., No. 16-10136-WGY, 2016 WL

4076829, at *7 (D. Mass. July 29, 2016) (quoting Overka v. Am. Airlines, Inc., 265 F.R.D. 14,

18 (D. Mass. 2010)).

The commonality requirement is satisfied here. The Defendants employed a uniform, tip

sharing system at the Chart House that applied to all servers and hostesses during the relevant

time period. Further, there is a single pivotal legal question at issue: whether Chart House

hostesses qualify as "wait staff employees" under the Tips Act, and thus whether the automated

tip-sharing program complied with Massachusetts law. Moreover, the Tips Act application to the

---

[6] Defendants argue that the number is too speculative because Plaintiffs are not able to provide the number of servers who tipped-out to hostesses during the relevant time period. [ECF No. 39 at 10–11]. The factual record, however, indicates that a hostess was scheduled for every shift, see [ECF Nos. 43 ¶ 36; 46 ¶ 36], and the tip-sharing program was automated to always remit tips to a hostess. [ECF No. 43 ¶ 32].

present case involves common evidence including the same job descriptions, employer

testimony, and server and host testimony that will inform the Court's application of the law to

the facts of this case.

### iii.   Predominance

The predominance requirement is met when "the court finds that questions of law or fact

common to class members predominate over any questions affecting only individual members."

Fed. R. Civ. P. 23(b)(3). The predominance requirement is more demanding than the

commonality requirement. In re PolyMedica Corp. Sec. Litig., 432 F. 3d 1, 3 n.5 (1st Cir. 2005).

The proposed class must show that "the proposed class is 'sufficiently cohesive to warrant

adjudication by representation.'" Overka, 265 F.R.D. at 19 (quoting Amchem Products, Inc. v.

Windsor, 521 U.S. 591, 623 (1997)). "Wage claims involving system-wide practices or policies

are appropriate for class treatment because establishing liability for one employee necessarily

establishes liability for the entire class." Garcia, 98 F. Supp. 3d at 286.

In this case, the common questions of law and fact predominate over any questions

specific to individuals. The bulk of the evidence that will be presented at trial will be common to

all hostesses, including internal company documents, job descriptions, or other communications

involving employer expectations for hostesses, and firsthand employee experiences. Defendants

argue that resolution of Defendants' liability will require an individualized inquiry for each

hostess. Yet the cases the parties cite indicate that courts treat the question of whether a

particular employee role qualifies as wait staff (or service employee, etc.) as dichotomous in

analogous situations, and the Court believes the same will be true here: Chart House hostesses

either were or were not wait staff employees for purposes of the Tips Act during the relevant

time period. See Cormier et al. v. Landry's, Inc. et al., No. 1:13-cv-11822-NMG, (D. Mass. Mar.

18, 2015) (adopting magistrate's report to certify class that reasoned that hostesses' job duties were not sufficiently varied to preclude class certification even if damages had to be individualized) [ECF No. 26-1 at A1]; Matamoros, 699 F.3d at 139 ("The class is ascertainable [of Starbucks baristas] under the objective standard of job titles and includes those who worked as baristas during the class period. The presence of such an objective criterion overcomes the claim that the class is unascertainable."); Raghai v. BH Normandy, No. 10-3392, Memorandum and Order on Plaintiffs' Motion for Class Certification (Mass. Super. May 23, 2012) (certifying class on claim that servers improperly shared tips with non-wait staff "food runners;" "[t]he case concerns a uniform policy implemented by the defendants. The food runners either are or are not wait staff") [ECF No. 26-1 at A23]; Foley v. Speakeasy Group, Inc., Suffolk Civ. A. No. 09-1740 (Mass. Super. Oct. 15, 2010) (certifying class where the "central claim in this case is that wait staff employees paid over a portion of their tips to individuals who do not meet the definition of 'wait staff employees'") [ECF No. 26-1 at A46]. The predominance requirement is not necessarily defeated by the need for some individualized inquiry, particularly when the overarching legal and factual questions are common to all. The Court finds that Plaintiffs have met their burden of showing predominance in this case.

### iv.  Typicality and Adequacy

Because the analysis of typicality and adequacy overlap so heavily here, the Court addresses them together. See In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 22–23 (D. Mass. 2008) ("The requirements of typicality and adequacy tend to merge . . . ."). Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is satisfied when the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that

form the basis of the class claims, and when the plaintiff's claims and those of the class are based

on the same legal theory." <u>Guckenberger v. Bos. Univ.</u>, 957 F. Supp. 306, 325 (D. Mass. 1997)

(internal quotation omitted); <u>see also</u> <u>In re Lupron Mktg. & Sales Prac. Litig.</u>, 228 F.R.D. 75, 89–

92 (D. Mass. 2005). In this case, the complained-of injuries arose from the same events or course

of conduct; namely, the automated tip-sharing program that required all servers to remit portions

of their tips to hostesses that shared the shift. Just like the entirety of the proposed class, the

named Plaintiffs were servers who worked at the Chart House in Boston during the relevant

period, were required to participate in the program that remitted tips to hostesses, and were paid

at a service rate. Thus, the injuries of the proposed named Plaintiffs and putative plaintiffs arose

from same course of conduct by the Defendants. Further, all of the claims are based on the same

legal theory—that the Chart House hostesses did not qualify as wait staff employees and that the

tip sharing program therefore violated the Tips Act. Accordingly, Plaintiffs have met Rule 23's

typicality requirement.

The adequacy requirement is met when Plaintiffs show that "the representative parties

will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The

necessary showing has two parts: "first that the interests of the representative party will not

conflict with the interests of any of the class members, and second, that counsel chosen by the

representative party is qualified, experienced, and able to vigorously conduct the proposed

litigation." <u>In re Lupron</u>, 228 F.R.D. at 90 (quoting <u>Andrews v. Bechtel Power Corp.</u>, 780 F.2d

124, 130 (1st Cir. 1985)). "Adequate representation is particularly important because of the *res*

*judicata* implications of a class judgment." <u>Andrews</u>, 780 F.2d at 130.

The Court finds that the named Plaintiffs can fairly and adequately protect the interests of

the class. Plaintiffs' counsel has represented that all of the named Plaintiffs have actively and

helpfully participated in the litigation thus far. Further, based on the same reasoning outlined in the typicality requirement analysis above, the Court also finds that the interests of the named Plaintiffs and the putative plaintiffs do not conflict.

Defendants levy several arguments against Plaintiffs' adequacy as class representatives. First, Defendants argue that Plaintiffs' alleged admissions that they saw hostesses engage in incidental serving/clearing of tables undermines their adequacy. Because the Court interprets the Tips Act to preclude a *de minimis* standard, this argument is mooted. Second, Defendants argue that the named Plaintiffs' criminal records suggest a lack of reliability and questionable veracity. While class representatives with criminal records certainly give the Court pause, it nonetheless ultimately concludes that the named Plaintiffs are adequate representatives. "Plaintiffs' adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as allegedly and tenuously evidenced by their prior criminal record." Randle v. Spectran, 129 F.R.D. 386, 392 (D. Mass. 1988) (quoting Haywood v. Barnes, 109 F.R.D. 568, 579 (E.D.N.C. 1986)). "Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct." 1 Newberg on Class Actions § 3:68 (5th ed.) (collecting cases). Moreover, the First Circuit has never held that the adequacy requirement turns on a plaintiff's criminal history. Circuits which have considered criminal histories in the context of adequacy have required a fairly high threshold for finding class representatives inadequate. See, e.g., CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 728 (7th Cir. 2011) ("For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members'

claims." (quoting <u>Dubin v. Miller</u>, 132 F.R.D. 269, 272 (D. Colo. 1990))). The Court finds here that the criminal histories have not been shown to so severely undermine Plaintiffs' credibility as to preclude them from being found adequate when no other significant conflict exists between the Plaintiffs and putative plaintiffs.

For all the reasons stated in Plaintiffs' brief and based on their legal representation thus far, the Court finds the second part of the adequacy requirement easily met because Plaintiffs' counsel is clearly qualified, experienced, and able to undertake this litigation. Accordingly, the Court finds the adequacy requirement is satisfied and that the named Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

v.  <u>Superiority</u>

Finally, Plaintiffs have shown "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, in light of the above analysis, judicial economy will be served by allowing this matter to proceed as a class action, rather than consolidated or individual actions. Further, it is unlikely that individuals would litigate these cases alone. The unfortunate reality is that the average person, especially working on a server's salary, likely cannot afford counsel or the time to proceed *pro se*. The Court finds the superiority requirement is met in this case.

**V.  CONCLUSION**

Accordingly, Defendants' Motion for Summary Judgment is <u>DENIED</u> [ECF No. 30], and Plaintiffs' Motion for Class Certification is <u>GRANTED</u> [ECF No. 26].

**SO ORDERED.**

Dated: March 31, 2017

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE
